UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

WILLIAM T. SAVAGE, SR.                     CASE NO.  3:21-CV-02253

VERSUS                                     JUDGE TERRY A. DOUGHTY

LASALLE MANAGEMENT CO., ET AL.             MAG. JUDGE KAYLA D. MCCLUSKY

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned is a motion to dismiss for failure to state a claim filed by

Defendants LaSalle Management Company a/k/a LaSalle Correctional Center, LaSalle

Corrections, L.L.C. ("LaSalle Management"), William McConnell ("McConnell"), and Elizabeth

"Libby" Tigner ("Tigner") (together, "Defendants").  [doc. #11].  Plaintiff William Savage, Sr.

("Plaintiff") opposes the instant motion.  [doc. #16].  For the reasons assigned below, it is

recommended that Defendants' motion be granted in part and denied in part.

## I.    FACTUAL BACKGROUND

This case involves workplace racial discrimination and retaliation claims by Plaintiff,

who began working for LaSalle Management in January 2001.  [doc. #1 ¶ 12].  LaSalle

Management is a company which owns and operates nine correctional facilities[1] throughout

Louisiana.  *Id.* ¶ 9.

In 2010, Plaintiff applied for the position of warden of Richwood Correctional Center,

expressing his interest in the position by sending application materials to McConnell, who co-

---

[1] These facilities include LaSalle Correctional Center, Richwood Correctional Center, River
Correctional Center, Lincoln Parish Detention Center, Catahoula Correctional Center, Jackson
Parish Correctional Center, Claiborne Parish Detention Center, Winn Parish Detention Center,
and Madison Parish Detention Center.  *Id.* at ¶ 9.

owns LaSalle Management, as well as to other members of upper management. *Id.* at ¶ 11. Plaintiff claims that he did not receive a response to his application and that, three months later, LaSalle Management hired "an inexperienced, white female, Elizabeth Libby Tig[n]er," as acting warden of Richwood Correctional Center. *Id.*

In 2011, Tigner was transferred to the main office at LaSalle Management and was replaced by Keith Deville, a white male. *Id.* at ¶ 12.

In December 2011, Plaintiff accepted a job as assistant warden at River Correctional Center. *Id.* at ¶ 13. When the warden at River Correctional Center, Warden Spinner, announced his retirement in 2016, Plaintiff applied for that position by email, but claims that he again did not receive a response. *Id.* After Plaintiff applied for the position, Warden Spinner went on sick leave, and Plaintiff acted as warden for six months. *Id.* at ¶ 14.

In July 2016, Tigner was hired to replace Warden Spinner as warden of River Correctional Center. *Id.* at ¶ 15.

In August 2018, Tigner informed Plaintiff that she would be retiring. *Id.* at ¶ 16. Plaintiff spoke with management and asked whether he would be interviewed for the open position. *Id.* at ¶ 17. Apparently, management told him that he would not be interviewed because Tigner had reported that Plaintiff had done "things around the prison that he didn't tell her about." *Id.* Eventually, Billy Tigner, a white male and then-assistant warden at Winn Correctional Center, was hired for the position. *Id.* at ¶ 18.

On October 10, 2018, Plaintiff filed a charge of discrimination against LaSalle Management with the Equal Employment Opportunity Commission ("EEOC") on the basis of race. *Id.* at ¶ 21.

Plaintiff claims that, in response to his EEOC complaint, he suffered retaliation at the hands of LaSalle Management and its employees. On February 25, 2019, Plaintiff was transferred to Winn Parish Detention Center, which apparently does not have a retirement system, thus causing Plaintiff to lose his retirement benefits. *Id.* at ¶ 22. Plaintiff claims that other employees began to taunt him about his EEOC complaint and that white assistant wardens were selected over Plaintiff to go to trainings, despite Plaintiff's "seniority status and years of experience." *Id.* at ¶¶ 22-24. Plaintiff also claims that Warden Deville "isolated him and never made him aware of department head meetings with other Assistant Wardens causing [Plaintiff] to miss out on pertinent information pertaining to the facility's daily operations." *Id.* at ¶ 25. Plaintiff further claims that he was prevented from attending the Louisiana Sheriff and Warden Convention that he had attended for the seven years prior and that he was placed under scrutiny, micromanaged, and stripped of all the duties and responsibilities he had assumed prior to his EEOC complaint. *Id.* at ¶¶ 25, 29.

On June 11, 2019, Plaintiff received a discharge letter stating, "your services are no longer needed." *Id.* at ¶ 28.

On June 19, 2019, Plaintiff filed a second EEOC complaint based on race and retaliation. *Id.* at ¶ 28.

On July 29, 2021, Plaintiff filed suit against LaSalle Management, McConnell, Tigner, and XYZ Insurance Company.[2] [doc. #1]. In his Complaint, Plaintiff alleges causes of action

---

[2] Plaintiff originally filed suit in the Alexandria Division of the Western District of Louisiana; however, it was transferred to this Court upon filing. [doc. #s 1 & 2].

Plaintiff also named as defendants in in his Complaint John Creed and Pat Temple, who are the COO and co-owner of LaSalle Management, respectively. However, the Clerk's office

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. § 23:332; and the Whistleblower Protect Act (the "WPA"), 5 U.S.C. § 2302(b)(8). [doc. #1, p. 7-8]. Plaintiff appears to assert Title VII claims for (1) wrongful termination; (2) failure to promote; (3) hostile work environment; (4) retaliation; and (5) failure to train.

On November 12, 2021, Defendants filed the instant motion to dismiss. [doc. #11]. Therein, Defendants allege that (1) Plaintiff cannot raise Title VII claims against individuals, so the claims against McConnell and Tiger should be dismissed; (2) Plaintiff's claims for failure to promote in 2010 and 2016 are time-barred; (3) Plaintiff's claim for failure to promote in 2018 fails because he has not established that he is a member of a protected class or that he was qualified for the position of warden; (4) Plaintiff's termination claim fails because he does not allege that he is a member of a protected class, establish that he was qualified for his position, or allege that he was replaced with someone outside of his protected group; (5) Plaintiff's hostile work environment claim fails because Plaintiff has not complained of severe or pervasive conduct or established that such conduct was based on race; (6) Plaintiff's retaliation claim must be dismissed because he has not plead sufficient facts to show that he engaged in a protected act or that he suffered an adverse employment action as a result of his protected activity; (7) Plaintiff's failure to train claim fails because denial of training is not an adverse employment action under Title VII; (8) Plaintiff cannot sue under the WPA because he was not a federal employee; and (9) Plaintiff's state law claims are time-barred.

---

dismissed Creed and Temple on May 17, 2022, for Plaintiff's failure to effect service within ninety days. [doc. #20].

On December 3, 2021, Plaintiff filed his opposition to the instant motion.  [doc. #16].  In it, Plaintiff argues that his 2010 and 2016 failure to promote claims are not time-barred based on the "continuing violation theory."  Plaintiff also argues that his 2018 failure to promote and termination claims survive because it is clear from his Complaint that he is a black male and that his background qualified him to be warden.  Plaintiff contends that his Complaint details how all his duties were stripped from him and, thus, his retaliation claim survives.  Plaintiff further argues that his state law claims have not prescribed due to the doctrine of continuing tort. Finally, Plaintiff urges that, if the Court finds that he has insufficiently pled the elements of his claims, the Court should allow leave to amend in lieu of dismissal.  Plaintiff's opposition did not address Defendants' arguments as to (1) the individual claims against McConnell and Tigner under Title VII; (2) claim of failure to train under Title VII; (3) claim under the WPA; or (4) state law claims against Tigner.

On December 10, 2021, Defendants filed their reply brief.  [doc. #18].  Defendants argue that the claims Plaintiff did not address in his opposition should be dismissed as abandoned. They also argue that the continuing violation theory cannot apply to Plaintiff's failure to promote claim, nor can the continuing tort doctrine apply to Plaintiff's state law claims.  Defendants also reiterate many of their arguments as to why Plaintiff has failed to plead the elements of his various Title VII claims.

Having been fully briefed, this matter is ripe.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure allow dismissal of a claim for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To state a claim, the pleading must contain a "short and plain statement . . . showing that the pleader is entitled to relief . . ."

F<small>ED</small>. R. C<small>IV</small>. P. 8(a)(2).  While the pleading need not assert detailed factual allegations, it must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663 (2009).

In deciding a motion to dismiss, the Court must accept as true all of the plaintiff's allegations, unless the allegation is a "threadbare recital[] of a cause of action's elements, supported by mere conclusory statements." *Id.*  Although legal conclusions may be asserted, "they must be supported by factual allegations" to gain the assumption of truth.  *Id.* at 664.  A well-pleaded complaint may proceed even if it strikes the Court that actual proof of the asserted facts is improbable and that recovery is unlikely.  *Twombly*, 550 U.S. at 556.  Nevertheless, the Court may dismiss a complaint "if it clearly lacks merit – for example, where there is an absence of law to support a claim of the sort made."  *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (citations and internal quotation omitted).

## III.    ANALYSIS

### A.  Plaintiff's Abandoned Claims

A claim is abandoned if the plaintiff fails to defend a claim in response to a motion to dismiss.  *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Scales v. Slater*, 181 F.3d 703, 708 n.5 (5th Cir. 1999).  The Court may properly dismiss with prejudice a claim that the plaintiff has abandoned.  *See Barker on Behalf of Barker v. City of Plaquemine*, No. 17-CV-340, 2019 WL 4580047, at *11 (M.D. La. Sept. 20, 2019).

In the instant motion, Defendants argue that the Court should dismiss Plaintiff's (1) Title VII claims against McConnell and Tigner individually; (2) Title VII failure to train claim; (3)

6

claims under the WPA; and (4) state law claims against Tigner.  Plaintiff failed to address these arguments in his opposition brief, thereby abandoning them.  Thus, IT IS RECOMMENDED that these claims be DISMISSED WITH PREJUDICE.

B.  *Plaintiff's Title VII 2010 and 2016 Failure to Promote Claims*

"The right to sue under Title VII is not absolute."  *Brown v. Peterson*, 3-CV-0205, 2006 WL 349805, at *5 (N.D. Tex. Feb. 3, 2006).  Before a plaintiff brings a Title VII claim in court, he must first exhaust his administrative remedies.  *Taylor v. Books a Million*, 296 F.3d 376, 378-79 (5th Cir. 2002).  This involves, *inter alia*, filing a charge with the EEOC within three hundred days of the alleged unlawful practice.  42 U.S.C. § 2000e-5(e)(1).

However, a claim for which the plaintiff did not file an EEOC charge within 300 days may be revived if it falls under the continuing violation theory.  *Johnson v. Fluor Corp.*, 181 F.Supp.3d 325, 333 (M.D. La. 2016) (citing *Vidal v. Chertoff*, 293 Fed. App'x 325, 327 (5th Cir. 2008)).  The continuing violation theory "relieves a plaintiff who makes such a claim from the burden of proving that the entire violation occurred within the actionable period."  *Abrams v. Baylor Coll. Of Med.*, 805 F.2d 528, 532 (5th Cir. 1986).  For the theory to apply, the plaintiff must show "a series of related acts, one or more of which falls within the [300] day period."  *Berry v. Bd. of Sup'rs of L.S.U.*, 715 F.2d 971, 979 (5th Cir. 1983) (internal citation omitted).  The United States Supreme Court has explained that the continuing violation theory does not apply to discrete acts.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging the act.").  Moreover, both the Fifth Circuit and the Supreme Court have found that an employer's failure to promote is a discrete discriminatory act, and, thus, the continuing

violation theory may not be used to revive a time-barred failure to promote claim. *Id.*; *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir. 1998) (finding that failure to promote claims are discrete discriminatory acts and, thus, not subject to the continuing violation theory) (abrogated on other grounds by *Health v. Bd. of Sup'rs for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731 (5th Cir. 2017)).

It is undisputed that the Plaintiff did not timely file an EEOC charge when he was denied promotions in 2010 or 2016. He relies, instead, on the continuing violation theory. However, that theory may not be used to revive Plaintiff's 2010 or 2016 failure to promote claims because these were discrete acts, and Plaintiff fails to offer any argument otherwise. In fact, both cases Plaintiff cites in support of the continuing violation theory specifically affirm district courts' decisions not to apply the continuing violation theory to failure to promote claims. *See Huckabay*, 142 F.3d at 240 ("[B]ecause these otherwise untimely claims are not continuing violations, [Plaintiff] cannot recover for his demotion or failure to be promoted."); *see also Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 ("The district court was entirely correct in refusing to apply the continuing violation theory to the appellants' racial discrimination for failure to promote and train claims.") (abrogated on other grounds by *McDaniel v. Nat'l R.R. Passenger Corp.*, 705 Fed. App'x 240 (5th Cir. 2017)).

In sum, Plaintiff did not file an EEOC charge within 300 days of the date he was denied promotions in either 2010 or 2016, and a defendant's failure to promote is a discrete discriminatory act not revivable by the continuing violation theory. Therefore, IT IS

RECOMMENDED that Plaintiff's 2010 and 2016 failure to promote claims be DISMISSED WITH PREJUDICE.[3]

### C. Plaintiff's Title VII 2018 Failure to Promote Claim

To succeed on a Title VII failure to promote claim, the plaintiff must show that (1) he is a member of a protected class; (2) he sought and was qualified for an open position; (3) he was rejected from the position; and (4) the employer hired someone outside of the plaintiff's protected class or continued to seek applicants with the plaintiff's qualifications. *McMullin v. Miss Dep't of Pub. Safety*, 782 F.3d 251 (5th Cir. 2015) (internal citations omitted).

Here, Plaintiff has sufficiently pled the elements for a failure to promote claim. As to the first element, Defendants are correct that Plaintiff never specifically says that he is a member of a protected class. However, the motion to dismiss standard is generous to the pleading party and requires the Court to read the Complaint in the light most favorable to Plaintiff and to draw all reasonable inferences in his favor. Reading the Complaint in this light, Plaintiff sufficiently establishes that he is part of a protected class. Plaintiff alleges that his claims "arise[] out of acts of employment (race) discrimination," and he explains that his EEOC charges were filed on the basis of race. [doc. #1 ¶¶ 4, 21, 28]. The Complaint also describes each person who was hired over Plaintiff as being white. *Id.* at ¶¶ 11, 12, 18. Finally, the Complaint claims that Plaintiff "was treated less favorably than similar situated white employees." *Id.* at ¶ 29. Reading this

---

[3]To the extent that Plaintiff seeks leave to amend his Complaint to cure any deficiencies, amendment would be futile and thus should not be allowed, even under the liberal standard of Federal Rule of Civil Procedure 15.

information under a motion to dismiss standard, Plaintiff has sufficiently plead that he is a member of a protected class.

Second, Plaintiff sufficiently alleges facts to show that he sought a position for which he was qualified.  Plaintiff claims that he has worked in the corrections field since 1996 and has worked for LaSalle Management since 2001.  *Id.* at ¶¶ 9, 10.  Plaintiff spent more than fifteen of his eighteen years with LaSalle Management as an assistant warden and acted as interim warden for six months during Warden Spinner's medical leave.  *Id.* at ¶¶ 10, 14.  Although Plaintiff never held a warden position, he had a two-decade career in corrections, most of which was spent in the position directly subordinate to the position for which he was applying.  Moreover, Billy Tigner, the employee who was ultimately hired for the warden position Plaintiff sought, had most recently been assistant warden at a different facility, suggesting that those with a history as assistant warden are qualified for warden positions.[4]

As to the final two elements, it is clear that Plaintiff was rejected from this position and that it was subsequently filled by someone outside of Plaintiff's protected class.  Plaintiff inquired and was told that he would not have the opportunity to interview for the position.  Shortly after, Billy Tigner, identified by Plaintiff as a white man, was promoted to the position.

---

[4] Furthermore, Plaintiff's claim does not fail, as Defendants argue, merely because he did not allege the qualifications required for the head warden position.  Defendants rely on *Johnson v. PRIDE Indus.*, which found that the plaintiff had not made out a prima facie case for a failure to promote claim because, among other things, he "could not identify how he was qualified or what the qualifications of the selected person were."  7 F.4th 392, 406 (5th Cir. 2021) (internal citation and quotation omitted).  However, *Johnson* was dismissed on summary judgment, not a motion to dismiss.  At this stage, Plaintiff need only "plead facts giving rise to a reasonable inference of plausibility for the ultimate elements of her claim."  *Jenkins v. La. Workforce Comm'n*, 713 Fed. App'x at 242 245 (5th Cir. 2017) (citing *Chhim v. Univ. of Tex.*, 836 F.3d 467, 470-71 (5th Cir. 2016)).  Plaintiff has met this lesser burden.

Accordingly, IT IS RECOMMENDED that the Court DENY Defendants' motion as to the 2018 Title VII failure to promote claim.

### D. Plaintiff's Title VII Wrongful Termination Claim

To state a claim for wrongful termination under Title VII, the moving party must show that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged from the position; and (4) was replaced by or was treated less favorably than similarly situated employees outside of his protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

In this case, Plaintiff has met his burden to allege facts sufficient to establish the required elements for a wrongful termination claim. First, as discussed *supra*, Plaintiff established that he is a member of a protected class.

Second, Plaintiff meets his burden of alleging facts to establish that he was qualified for the position from which he was terminated. Plaintiff states that he had been an assistant warden for fifteen years, which is certainly sufficient for the Court to reasonably infer that he was qualified for this position. *See Sinkfield v. Univ. of Tex. Med. Branch*, 2017 WL 367568, at *5 (S.D. Tex. Jan. 25, 2017) (finding that at the motion to dismiss stage, Plaintiff had established that she was qualified for her position by alleging that she had held it for two years). Moreover, Plaintiff's allegation that he last received a favorable review in 2012 does not negate this showing. Plaintiff alleges racial discrimination by LaSalle Management; thus, it is not

unreasonable to infer, as argued by Plaintiff, that, if he was indeed discriminated against, this discrimination included unearned unfavorable reviews.[5]

Third, Plaintiff alleges, and Defendants concede, that Plaintiff was discharged from his position.

Finally, Plaintiff alleges that he was treated less favorably than his white counterparts. He claims that, in May 2019, a white assistant warden was selected over him to attend training for immigration offenders.  [doc. #1 ¶ 24].  Plaintiff also suggests that he was micromanaged and his duties were limited and monitored in a way that his white counterparts were not.  *See id.* at ¶ 29.

Thus, because Plaintiff has pled sufficient facts to support his claim, IT IS RECOMMENDED that the Court DENY Defendants' motion as to the Title VII wrongful termination claims.

### E.  *Plaintiff's Title VII Hostile Work Environment Claim*

To establish a hostile work environment claim under Title VII, the plaintiff must show that he (1) is a member of a protected group; (2) was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action.  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (internal quotations and citations omitted).  However, the Fifth Circuit has "held that where the alleged harasser is a supervisor a plaintiff need not satisfy the fifth prong of the hostile work

---

[5] The undersigned draws no conclusion as to Plaintiff's ability to ultimately survive a motion for summary judgment or to prove his case at trial, only that he has met his burden at this stage of the litigation.

environment analysis." *Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 840 (5th Cir. 2015) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir.1999)).

Defendants also move the Court to dismiss this claim. At the outset, Defendants point out that it is not entirely clear whether Plaintiff is bringing a hostile work environment claim. He alleges only that he was subjected to a "hostile environment" for he allegedly reported Billy Tigner for choking an inmate. [doc. #1, ¶ 27]. Plaintiff also makes the conclusory allegation that "[a]lternatively, the acts of the supervisor were severe and pervasive and adversely affected the plaintiff's working conditions." [doc. #1, ¶ 33].

In response, Plaintiff points to the factual allegations in his Complaint that he was subjected to false accusations about his actions at the prison, he was prevented from attending training, that he was subjected to unfavorable and biased verbal evaluations as a pretext to not promote him, that he was isolated from department head meetings and prevented from attending the Louisiana Sheriff's and Warden's Convention that he had attended for the last seven years, that he was consistently placed under scrutiny, given limited duties, and micromanaged; and that he was later forced to transfer to Winn Corrections and then fired.

[doc. #1, ¶¶ 17, 19, 24, 25 & 29].

In reply, Defendants contend that the allegations relied upon by Plaintiff are not sufficient to meet the severe or pervasive standard and that, further, as previously argued, Plaintiff does not allege or argue that these actions were based on race. They reiterate that Plaintiff did not allege that Defendants knew or should have known of the harassment, pointing out that his argument is not supported by the facts alleged in his Complaint.

Plaintiff has met his burden as to three of the elements.  First, as discussed *supra*, Plaintiff has alleged that he is part of a protected class, and, as to the second element, Plaintiff details harassing behavior, including disparaging comments about his EEOC charge, missed opportunities for training and conferences, failure to be notified for department head meetings, and a transfer which led to the diminution of Plaintiff's retirement benefits.  As to fifth element, to the extent necessary, Plaintiff has alleged facts to support his showing.  Contrary to Defendants' argument, Plaintiff does not have to allege facts to show that LaSalle Management knew of the discrimination and failed to take remedial action if he was subjected to a hostile work environment based on the actions of a supervisor, rather than a co-worker.  Certainly, the Court may reasonably infer that Plaintiff was not stripped of duties, or reassigned by a co-worker.  To the extent that some of Plaintiff's allegations refer to the actions of co-workers, Plaintiff specifically asserts in his Complaint that he informed upper management "numerous times" of the allegedly discriminatory practices and environment, and that management failed to take remedial action.  See [doc. #1, ¶ 33].

However, Plaintiff's claim fails on the third and fourth elements.  As to the third element, Plaintiff fails to assert any facts that indicate that the harassment he suffered was due to his race.  Plaintiff merely concludes that he "was treated less favorably than similar[ly] situated white employees."  [doc. #1 ¶ 29].  This conclusory allegation is not enough, however, to meet his burden to show a causal link between the harassment and race, even at the motion to dismiss stage.

Finally, as to the fourth element, Plaintiff has failed to show that the harassment he suffered affected a term, condition, or privilege of his employment.  To satisfy this element, "the harassment complained of must be sufficiently severe or pervasive as to alter the conditions of

employment and create an abusive working environment." *Walker v. S. Cent. Bell Tele.* Co., 904 F.2d 275, 277 (5th Cir. 1990).  In determining whether a workplace was sufficiently hostile, the Court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez v. Yellow Transp., Inc*., 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey*, 286 F.3d at 268) (internal quotations omitted).  Here, Plaintiff describes being passed over for trainings and a convention that appeared to be optional, as well as being micromanaged and scrutinized.  Plaintiff also alleges that he was left out of department head meetings, taunted about his EEOC complaint, and ultimately transferred to Winn Correctional Center.  In essence, Plaintiff relies on the same allegations to support his claims of discrimination, retaliation, and hostile work environment.  For the reasons stated, both *supra* and *infra*, the undersigned has recommended that Defendants' motion to dismiss be denied as to Plaintiff's discriminatory termination and retaliation claims.  While these allegations may serve to support his claim of wrongful termination or to show materially adverse actions under the lesser objective standard for retaliation, they do not rise to the level of  conduct so severe or pervasive as required to alter the conditions of his employment.

Accordingly, IT IS RECOMMENDED that the Court DISMISS WITH PREJUDICE Plaintiff's Title VII racially hostile work environment claim.[6]

---

[6] As previously noted, Plaintiff requested in the alternative to amend his Complaint if the undersigned found it to be deficient.  Under Rule 15, leave shall be freely given where justice so requires.  However, in this case, it appears that Plaintiff has provided all factual allegations to support his claims, and the undersigned has found them lacking under the requisite standard.  If Plaintiff has additional facts supporting his claims, then he can certainly raise that argument during the time period for the filing of objections to the Report and Recommendation.

F.  *Plaintiff's Title VII Retaliation Claim*

To state a claim for retaliation under Title VII, the plaintiff must show that (1) he engaged in an activity protected by Title VII; (2) his employer took action against him that was materially adverse; and (3) there is a causal link between the protected activity and the adverse employment action.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006); *Leal v. McHugh*, 731 F.3d 405, 416-17 (5th Cir. 2013).

Here, Plaintiff has met his burden to show retaliation.  First, Plaintiff alleges that he was retaliated against after filing an EEOC charge on the basis of race, which is considered a protected activity.  [doc. #1 ¶¶ 21, 22]; *see Rodrigue v. PTS Mgmt Grp.*, LLC, 550 F.Supp.3d 376, 400 (W.D. La. 2021) (a "protected activity" under Title VII is defined as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII") (internal quotations and citations omitted).

Second, Plaintiff has established that he suffered a materially adverse action.  In this context, a materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* (internal quotations and citations omitted).  Here, after Plaintiff filed his charge with the EEOC, he was transferred to Winn Parish Detention Center.  According to Plaintiff, Winn Parish Detention Center does not have a retirement system, which caused Plaintiff to lose his benefits.  *Id.* at ¶ 22.  Because many reasonable employees would consider loss of retirement benefits to be a serious hardship, Plaintiff has shown that he suffered a materially adverse action.

Finally, the Court can reasonably infer that there is a causal connection between Plaintiff's EEOC charge and his subsequent transfer to Winn Correctional Center because the

transfer occurred only five months after Plaintiff filed his charge.  *See McCoy*, 492 F.3d at 562 ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation.") (internal quotation and citation omitted).

Accordingly, IT IS RECOMMENDED that the Court DENY Defendants' motion as to Plaintiff's Title VII retaliation claim.

G.  *Plaintiff's Claims Under La. R.S. § 23:332*[7]

Louisiana state law makes it illegal for an employer to discriminate against its employees on the basis of race.  LA. R.S. § 23:332.  Employment discrimination suits filed under Louisiana state law must be filed within one year of the alleged adverse employment action.  LA. R.S. § 23:303(D).  This prescriptive period begins to run the day the moving party is notified of the adverse employment action.  *Eastin v. Entergy Corp.*, 2003-1030 (La. 02/06/07); 865 So.3d 49, 53-54.  Although the prescriptive period is suspended during the pendency of an EEOC administrative review, no suspension may last longer than six months.  *Id.*  Thus, the maximum amount of time a plaintiff has to bring an action under LA. R.S. § 23:332 is eighteen months.

However, otherwise prescribed claims may be revived by the continuing tort theory. *Lopez v. House of Faith Non-Denomination Ministries*, 29 So.3d 680, 682 (La. App. 4 Cir. 2010).  If an injury is continuous and gives rise to successive damages, prescription will not

---

[7] The undersigned has recommended that all state law claims asserted against Tigner be dismissed with prejudice as abandoned.  Additionally, the undersigned has now recommended that the remaining claims under La. R.S. § 23:332 be dismissed as to all Defendants as time barred.  Thus, if the instant report and recommendation is adopted, there is no reason to reach Defendants' alternative argument that Plaintiff has no cause of action individually against William K. McConnell under La. R.S. § 23:332.

begin to run until the conduct causing the damage has subsided. *Id.* (citing *S. Cent. Bell Tel. Co. v. Texaco, Inc.*, 418 So.2d 531, 533 (La. 1982)).

Here, despite Plaintiff's assertions, the continuing violation theory does not apply. While Plaintiff may be correct that he has suffered continuous injuries since his termination, Plaintiff does not allege a continuing cause of these injuries. In fact, the last alleged discriminatory act occurred on June 11, 2019, when Plaintiff was terminated. Yet, Plaintiff did not file suit until July 29, 2021, well past both the one-year and eighteen-month deadlines. Thus, because Plaintiff has failed to show a continuing violation, he may not revive his time-barred state law claims with the continuing violation theory. Accordingly, IT IS RECOMMENDED that Plaintiff's state law claims be DISMISSED WITH PREJUDICE.

## IV.    CONCLUSION

Accordingly, **IT IS RECOMMENDED** that Defendants' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**.

**IT IS RECOMMENDED** that the instant motion be **GRANTED** as to Plaintiff's claims (1) against McConnell and Tigner under Title VII; (2) for failure to train under Title VII; (3) under the WPA; (4) against all Defendants under LA. R.S. § 23:332; (5) for failure to promote in 2010 and 2016 under Title VII; and (6) for racial hostile work environment under Title VII. **IT IS RECOMMENDED** that these claims be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the instant motion be **DENIED** as to Plaintiff's (1) Title VII failure to promote claim as to his 2018 application for warden; (2) Title VII wrongful termination claim; and (3) Title VII retaliation claim.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 11th day of July, 2022.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

19